

1   Olaf Arthur Landsgaard, Esq.
    Law Offices of Olaf Landsgaard
2   P.O. Box 2567, 4171 Knox Avenue
    Rosamond, CA 93560
3   661-256-9271
    661-256-9212 Fax
4   State Bar No.: 125747
       Olaf @ AhAFlandsgaard
5   Attorney for Plaintiff,
    Antelope Valley Allied Arts Association
6



FILED
CLERK, U.S. DISTRICT COURT

JAN 19 2011
2:50

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

7                    **********

8            UNITED STATES DISTRICT COURT

9   CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  ANTELOPE VALLEY ALLIED          )Case No.:  CV10-10039 DSF (FM0X)
    ARTS ASSOCIATION (AVAAA);       )
12  Linda Reynolds; Tonia Thompson; )FIRST AMENDED COMPLAINT FOR:
    Steve Ponting;   Lyndon Easley; )  1.  DEFAMATION
13  Tracee Estabrooke;  David Hasse;)  2.  TAKING WITHOUT
                                     )      COMPENSATION (U.S.
14  and Evie Cook                   )      Const. Amends. V, XIV)
                                     )  3.  VIOLATION OF CIVIL RIGHTS (42
15              Plaintiffs,          )      USC
                                     )      1983)
16       vs.                         )  4.  FORCIBLE ENTRY
                                     )  5.  BREACH OF COVENANT OF GOOD
17                                   )      FAITH AND FAIR DEALING
    LANCASTER                        )  6.  INTENTIONAL
18  REDEVELOPMENT AGENCY;            )      MISREPRESENTATION
    CITY OF LANCASTER; MITRA         )  7.  NEGLIGENT
19  LICCIARDI, individually and dba  )      MISREPRESENTATION
                                     )  8.  FRAUD (PROMISSORY)
20  CEDAR PERFORMING ARTS            )  9.  FRAUDULENT MISREPRESEN-
    ACADEMY (CPPA); MICHELLE         )      TATION  (1906)
21  NAVARETTE; JOSIE ALCOSER;        ) 10. INDUCING BREACH OF
    and Does 1 through 100, inclusive,)      CONTRACT
22                                   ) 11. INTENTIONAL INTERFERENCE
                      100            )      WITH PROSPECTIVE ECONOMIC
23                                   )      ADVANTAGE
                                     ) 12. NEGLIGENT INTERFERENCE WITH
24              Defendants.          )      PROSPECTIVE ECONOMIC
                                     )      ADVANTAGE
25                                   ) 13. INTENTIONAL INTERFERENCE
                                     )      WITH CONTRACTUAL RELATIONS
26                                   ) 14. DECLARATORY RELIEF
                                     )      a.  To declare the true board
27                                   )      b.  One Action Rule mandates
                                     )          reconveyance of note and deed of
28                                   )          trust
                                     )      c.  The One Action Rule mandates the
                                     )          Lancaster Redevelopment Agency

─────────────────────────────────────────────

1  )             reconvey the note and deed of trust
2  )             to AVAAA.
3  )       d.   The Lancaster Redevelopment
4  )             Agency has no right, title, or
5  )             interest in 44845 Cedar Avenue,
6  )             44851 Cedar Avenue, 44857 Cedar
   )             Avenue, and 606 Lancaster
7  )             Boulevard ("Cedar Center").
8  )       e.   Violation of disposition agreement
9  )             for failure to remove old fuel tanks
   )       f.   Violation of disposition agreement
10 )             for failure to remove to remove
11 )             asbestos.
    15.   INJUNCTIVE/MANDAMUS RELIEF
12 ) 16.   QUIET TITLE
    17.   BREACH OF THE DISPOSITION
13 )         AGREEMENT
    18.   QUI TAM
14 [CC §§ 1167, 3333, 3422; CCP §§526, 527]
15

### TABLE OF CONTENTS

**INTRODUCTION** ................................................................................1

**JURISDICTION AND VENUE** ..........................................................1

**PARTIES** ............................................................................................2

**NATURE OF ACTION** ......................................................................4

**FACTS COMMON TO ALL CAUSES OF ACTION** ......................9

**FIRST CAUSE OF ACTION: DEFAMATION** ..............................31

**SECOND CAUSE OF ACTION: VIOLATION OF TAKINGS CLAUSE** ..............34

**THIRD CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS** ...........................36

**FOURTH CAUSE OF ACTION: FORCIBLE ENTRY** .................38

**FIFTH CAUSE OF ACTION: BREACH OF THE COVENANT OF GOOD FAITH**

      **AND FAIR DEALING** ...............................................................40

SIXTH CAUSE OF ACTION:  INTENTIONAL MISREPRESENTATION ..........42

SEVENTH CAUSE OF ACTION:  NEGLIGENT MISREPRESENTATION ..........44

EIGHTH CAUSE OF ACTION:  FRAUD (Promissory).............................................46

NINTH CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION ............49

TENTH CAUSE OF ACTION: INDUCING BREACH OF CONTRACT .................50

ELEVENTH CAUSE OF ACTION: INDUCING BREACH OF CONTRACT ..........51

TWELTH CAUSE OF ACTION:  INTENTIONAL INTERFERENCE WITH
        PROSPECTIVE ECONOMIC ADVANTAGE ...................................53

THIRTEENTH CAUSE OF ACTION:  NEGLIGENT INTERFERENCE WITH
        PROSPECTIVE ECONOMIC ADVANTAGE ...................................56

FOURTEENTH CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH
        CONTRACTUAL RELATIONS.........................................................57

FIFTEENTH CAUSE OF ACTION: DECLARATORY RELIEF...........................59

SIXTEENTH CAUSE OF ACTION: MANDAMUS/INJUNCTION ......................60

SEVENTEENTH CAUSE OF ACTION: QUIET TITLE ...................................62

EIGHTEENTH CAUSE OF ACTION:  VIOLATION OF DISPOSITION
AGREEMENT.........................................................................................66

NINETEENTH CAUSE OF ACTION:  QUI TAM.............................................69

DEMAND FOR JURY TRIAL.........................................................................70

PRAYER FOR RELIEF....................................................................................70

First cause of action, for DEFAMATION ......................................................70

Second cause of action, for TAKING WITHOUT COMPENSATION (U.S. Const.,
Amends. V, XIV) ...........................................................................................70

Third cause of action, for VIOLATION OF CIVIL RIGHTS (42 USCS 1983) ............70

Fourth cause of action, for FORCIBLE ENTRY ............................................71

Fifth Cause of Action For BREACH OF COVENANT OF GOOD FAITH AND FAIR
        DEALING and the Seventh Cause of Action for NEGLIGENT
        MISREPRESENTATION................................................................71

Sixth Cause of Action For INTENTIONAL MISREPRESENTATION; the
    Eighth Cause of Action for FRAUD (PROMISSORY); the Ninth Cause of
    Action for FRAUDULENT MISREPRESENTATION; the Tenth Cause of
    Action for INDUCING BREACH OF CONTRACT; Eleventh Cause of
    Action for INDUCING BREACH OF CONTRACT; the Twelfth Cause of
    Action for NEGLIGENT INTERFERENCE WITH PROSPECTIVE
    ECONOMIC ADVANTAGE; the Fourteenth Cause of Action for
    INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC
    ADVANTAGE and the Eighteenth Cause of Action for VIOLATION OF
    THE DISPOSITION AGREEMENT. ...................................................... 72

Fifteenth Cause of Action for DECLARATORY RELIEF................................ 73

Seventeenth Cause of Action for Damages for QUIET TITLE ........................... 73

Sixteenth Cause of Action for INJUNCTIVE/MANDAMUS RELIEF .............. 75

Nineteenth cause of action, for Whistle Blowing (Qui Tam)............................... 76

**RELIEF AS TO ALL CAUSES OF ACTION**...................................................... 76

**VERIFICATION**............................................................................................... 78

**PROOF OF SERVICE**...................................................................................... 79

# INTRODUCTION

**"When some people want to say I'm bullying my way through this, understand that there are five bullies, not just one."[1]**

## COMES NOW THE PLAINTIFFS AND ALLEGE AS FOLLOWS:

### JURISDICTION AND VENUE

1. The Court has personal jurisdiction over DEFENDANTS because at least one is a resident of the Central District of California.  28 USC §1391(b)(1).

2. The court has jurisdiction to hear this matter under 28 USC §1331.  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3. Therefore, the Federal District Court has original jurisdiction to hear Plaintiffs' claims for violations to 42 USCS 1983, U.S. Constitution's Fifth Amendment prohibition against taking private property for public use without just compensation, the Sherman Anti-Trust and Clayton Acts, and Qui Tam.

4. Pendant venue is proper in this Court in accordance with 28 USC §1391(b)(1) because PLAINTIFF is informed and believes and thereby

---

[1] Mayor R. Rex Parris speaking at the January 12, 2010 Lancaster Redevelopment Agency (LRA) meeting in response to questions regarding the AVAAA investigation by the defendants.

alleges DEFENDANTS, or some of them, reside in the federal judicial district (Central District of California).

5.  Additionally, in accordance with 28 USC §1391(b)(2), the harms suffered by PLAINTIFF occurred largely in the Central District of California.

6.  All state claims in this action are so related to the federal claims as to invoke supplemental jurisdiction under 28 USC §1367(a).

7.  PLAINTIFFS have complied with the California Tort Claims act for all state tort claims alleged.  Plaintiffs are exempt from Tort Claims statutes when it comes to the direct contract breaches concerning public entity obligations incurred under contracts with AVAAA.

## PARTIES

8.  Plaintiff, ANTELOPE VALLEY ALLIED ARTS ASSOCIATION, is a California non-profit corporation in good standing, incorporated in 1957, referred to as "AVAAA" as well, herein.

9.  Linda Reynolds, plaintiff, is the immediate past president of AVAAA and Steve Ponting is the parliamentarian of AVAAA.  Both are residents of Kern County, California.

10.  Tonia Thompson, Lyndon Easley, Tracee Estabrooke, David Hasse, and Evie Cook are or were officers for AVAAA at the time defamatory statements were made by defendants' mayor in his official capacity, and at

the unlawful taking of both AVAAA property as well as their own.  They are residents of Los Angeles County, California, in the Central District of California.

11.  Linda Reynolds, Steve Ponting, Tonia Thompson,  Lyndon Easley,  Tracee Estabrooke,  David Hasse, and Evie Cook (all hereinafter referred to as "Plaintiff") do not know the true names of defendants sued in this action as Does 1 through 100.

12.  Defendants Michelle Navarette, Josie Alcoser, and Mitra Licciardi are individuals who are, or were, residing in Los Angeles County in the Central District of California.

13.  Defendant City of Lancaster was established in November, 1977 as a general law City in the State of California, County of Los Angeles.  On May 10, 2010 the City of Lancaster became a "Charter City".

14.  Defendant Redevelopment Agency (aka, "RDA", or "City of Lancaster, RDA") was established in 1978 by David McEwen, Esq., within the City of Lancaster, in the State of California, County of Los Angeles.

15.  Defendants Does 1-50 are employees or State Actors for the defendants, City of Lancaster and RDA.

16.  At all relevant times, each defendant acted as the agent of every other defendant.

## NATURE OF ACTION

Plaintiffs are informed and believe:

17. On or about October 1, 2009, volunteers, including those from the Home Depot, removed the flooring in a building AVAAA was required to rehabilitate as part of a Disposition Agreement with the defendants, City of Lancaster and RDA.

18. It was alleged by RDA agent Mitra Licciardi that asbestos had been exposed and the Home Depot employee – husband to plaintiff Tonia Thompson, was fired.

19. An asbestos survey done by the City in October 1992 found asbestos in the heating ducts and flooring. *See Exhibit 8.*

20. The Disposition Agreement detailing the sale of the building to AVAAA from the City of Lancaster in 1994 referred to "asbestos" as a hazardous substance, but said nothing about the existence of asbestos on the property – if at all – and in what form – if it existed on the property.

21. That same Disposition agreement, signed March 25, 1994, (section 2.11(D)) required defendants, City of Lancaster and RDA, to remove underground storage tanks ("USTs").

22. California and the EPA required major upgrades for those who are in possession of USTs and removal of those tanks that do not meet compliance

by December 22, 1998. The City, in taking responsibility for the UST, had to choose one of three options by that deadline. Petroleum distributers had to complete the upgrade by January 1, 1999 in order to continue receiving petroleum shipments. Over twelve years later, the tanks remain underground and have not been upgraded.

23. On August 28, 2009, the AVAAA board of directors listened to defendant Mitra Licciardi regarding lifting the termination of her lease. Defendant Licciardi's insulting words did not win the day. The AVAAA board voted to continue the previous AVAAA board's action and evict her – as the lease had expired and she was not welcome.

24. In retaliation, defendant Licciardi had a plan – and a Halloween show to put on, called "Nightmare Before Christmas". On or about October 31, 2009 Mayor R. Rex Parris played himself in the production.

25. On or about and between October 1, 2009 and January 14, 2010, Defendant City of Lancaster and Defendant Lancaster Redevelopment Agency ("Agency" or "LRA"), and its head director ("Mayor") and employees actively participated, as agents for the City of Lancaster Redevelopment Agency, in the attempted takeover of the corporate board of AVAAA.

26. Lee D'Errico, in addition to being an employee for Defendant City of Lancaster and Defendant Lancaster Redevelopment Agency (referred to

herein as "RDA" or "the agency") is a Los Angeles County deputy sheriff who testified at the January 14, 2010 meeting that illegal activities took place by AVAAA building managers in September 2009.

27. At or about the time rehabilitation work began in late September, 2009, the two people AVAAA had assigned as building managers, Mike Boyd and Willis Murray, were arrested on various charges. Boyd's charges were later dismissed. Murray, almost 80 years of age, did not fight a battery charge, opting for an anger management disposition.

28. In the mean time, the remaining members of the AVAAA board were being accused of impropriety – specifically by defendants Navarette and Licciardi, state actors for the RDA, in regards to the new treasurer, Susie Voight. Many of the directors, all volunteers, were responding to the onslaught with a collective, "I don't need this" and talked of resigning their positions.

29. On October 7, 2009, agency employee Lee D'Errico (for both defendants RDA and City of Lancaster) met with seven individuals (Eric Perry, Nina Spencer, defendant Michelle Navarette, defendant Josie Alcoser, defendant Brittany Harris, plaintiff Tracee Estabrooke, and defendant Mitra Licciardi – a tenant who was being evicted, had not paid rent, and was forcing other tenants out of the Cedar Center) at City Hall around 11:00 a.m.

30. The express purpose of the meeting at Lancaster City Hall was for a City/RDA employee to instruct the seven in how to wrest control of the Cedar Center from the plaintiffs and take over the AVAAA board – who was by then in much disarray.

31. On January 14, 2010, and since then, Defendant City of Lancaster and Defendant Lancaster Redevelopment Agency (referred to herein as "RDA" or "the agency"), its Mayor and employees, as well as their appointed agents to the "Eric Perry Board", actively participated, as agents for both the defendant City of Lancaster and defendant Lancaster Redevelopment Agency (referred to as "RDA") in taking over possession of the AVAAA properties on Cedar Avenue and Lancaster Blvd., including those known as "the Cedar Center" using "self-help" and actively defaming plaintiffs at public hearings and in the press.  At all times these same people encouraged, assisted in, and directly interfered with tenants of AVAAA's "Cedar Center" and their businesses.

32. On **June 21, 2010**, Lancaster's Redevelopment Agency (RDA) outright seized possession of the Cedar Center, a group of buildings owned by **Antelope Valley Allied Arts Association**, a California non-profit corporation since 1994 (AVAAA).  This is the first and only action taken by

the Lancaster's Redevelopment Agency under the note and deed of trust it holds as the lender on the property.

33. On **June 29, 2010**, pursuant to *Security National Bank v. Wozab*, 51 Cal.3d 991, 1006 (1990), AVAAA provided the Lancaster's Redevelopment Agency an opportunity to return the security it had taken. The RDA had until August 1, 2010 to return possession. **To date, possession has not been returned. Nor has the RDA made any move to return possession.**

34. Because possession has not been returned, and the RDA exercised its "one-action" under CCP 726 (aka, "The one action rule"), the note and deed of trust must be conveyed.

35. On **August 5, 2010** defendant RDA was obligated to re-convey the note and deed of trust, pursuant to **Civil Code section 2941(b)(1)**.

36. Although Lancaster Redevelopment Agency (RDA) remains in AVAAA property, it has failed to sign and record the reconveyance.

37. Defendant RDA holds the note and deed of trust on the property owned by AVAAA. After RDA overtly took possession on June 21, 2010, AVAAA asked it, most politely, to return possession on or before August 1, 2010. The RDA failed to return possession.

38. PLAINTIFFS seek damages from each of the public entities and individuals acting in their individual and official capacities, as named above.

39. PLAINTIFFS' claims are based on personal injuries, breach of duty, breach of contract, breach of disposition agreement, failure to reconvey note and deed of trust after seizing possession, taking without compensation, violation of due process, defamation, interference with contract and the like, fraud, and quiet title sustained by claimant on or about and between September 1, 2009 and August 30, 2010 (with some actions being a continuing tort or continuing damages as a result of Defendants' possession of plaintiffs property) under the following circumstances:

## FACTS COMMON TO ALL CAUSES OF ACTION

### Plaintiffs are informed and believe

40. At or about 2:30 p.m. on October 7, 2010, the seven usurpers later known as the "Eric Perry board" (minus Licciardi) met at Eric Perry's house and held an impromptu meeting. The seven created minutes: first order of business was to accept resignations. The second order: to remove "members" who were "derelict of duty". None of the "directors" of this "board" ("Eric Perry" board) had been sworn in as officers or directors of AVAAA – though three had been elected in August, 2009. The minutes of the "Eric Perry" meeting also state that the problem tenant, one Mitra Licciardi, was placed on the board of directors.

41. At 4:00 p.m., October 7, 2010, the Mayor, without permission or invitation from AVAAA, was present in the AVAAA corporate office for at least 45 minutes, along with Mitra Licciardi, and others of the group that had never been sworn in as officers.  The Mayor and his usurpers claimed they were there to help Linda Reynolds prepare for the October 10, 2009 meeting.

42.  On October 7, 2009, Lucinda Coker, gallery director, Lorraine Mitchell, historian, Suzie Voigt, treasurer, Mike Boyd, 3rd Vice-President, Willis Murray, 1st Vice-President, and Linda Reynolds, president, comprised the Board of AVAAA.  Attached as **Exhibit 1** herein is a graphic showing the October 7th situation.

43. On October 8, 2009, at about 7:00 p.m., the seven (referred to herein as "usurpers") held another meeting covering the  same ground as the October 7, 2009 meeting – according to the minutes.  Minutes from the usurpers board meeting show at the October 8, 2009 meeting the president of AVAAA, though not named, was removed – as was the trustee – for being "derelict of duty".   No notice of the meeting agenda or of the meeting itself was provided to the official AVAAA board members.

44. On October 8th, 2009, Lucinda Coker, gallery director, Lorraine Mitchell, historian, Suzie Voigt, treasurer, Mike Boyd, 3rd Vice-President, Monique Johnson 2nd Vice President (who had rescinded her resignation by then and

was the 1st Vice-President, elect), Willis Murray, 1st Vice-President, and Linda Reynolds, president, comprised the Board of AVAAA. Attached as **Exhibit 2** herein is a graphic showing the October 8th situation.

45. Between October 7, 2009 and October 10, 2009, the AVAAA offices were broken into, the checkbook taken, and papers removed.

46. On October 10, 2009 the seven usurpers tried to block members of the public attempting to attend the meeting by persuading those in attendance that they were the true board. However, logic, reason, and purpose prevailed and the seven capitulated to Linda Reynolds statement that "The Board stands as elected. Let's all eat cake." This led to a violent exchange of words between Licciardi and RDA employee, D'Errico (Licciardi was not pleased – she had been before the AVAAA Board on August 28, 2009 concerning the extension of her lease – and was to have vacated by October, 2009 – and did not win any points by referring to the board as "the dinosaur board of old people" or words to that effect).

47. Defendants', Josie Alcoser and Michelle Navarette, swearing in was performed by Willis Murray on October 14, 2009. Attached as **Exhibit 3** herein is a graphic showing the October 14th situation.

48. While Linda Reynolds remained as president, Eric Perry was appointed to the AVAAA Board and when Perry attended AVAAA's meeting on October

28, 2009, he was sworn in as secretary.   He later was removed for missing meetings.

49. On November 19, 2009, Defendant Josie Alcoser tendered her unequivocal resignation from the AVAAA board.  Alcoser and Navarette were two of the three unsworn board members who attempted to create the "Eric Perry board" with the October 7th and 8th coup.

50. **Amendment I** to the Constitution of the United States commands: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; **or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.**"

51. The City of Lancaster's Redevelopment Agency ("RDA"), in an attempt to stifle AVAAA's rights of free speech, assembly, and right to petition, insisted on or about December 21, 2009 that Steve Derryberry, Joshua Mann, and Mike Rosa each be placed on AVAAA's board of directors **(email from Jason Caudle, Exhibit 4)**.

52. On or around December 21, 2009, AVAAA's president (Linda Reynolds) was told that she would have get on board with the Agency and City, or go down with the ship.  Linda Reynolds, exercising her right of association as well as those of Evie Cook, Lyndon Easley, Tracee Estabrooke, Monique

Johnson, Steve Ponting, & Tonia Thompson, refused to add Steve

Derryberry, Joshua Mann, or Mike Rosa to the board of directors (**email of**

**December 24, 2009, Exhibit 5**).

53. By January 12, 2010, these three (Derryberry, Mann, and Rosa) were

appointed to "the Eric Perry Board" at the insistence of the defendant

Lancaster Redevelopment Agency in anticipation of the January 12, 2010

Lancaster Redevelopment Agency 5:00 p.m. meeting.

54. At the January 12, 2010 Lancaster Redevelopment Agency meeting, the

Mayor (as head director of the Agency) christened "the Eric Perry Board" as

the AVAAA board.   This was a violation of AVAAA's civil rights as well

as each member of the board of directors' civil rights, including Evie Cook,

Lyndon Easley, Tracee Estabrooke, Monique Johnson, Steve Ponting, &

Tonia Thompson. (*Tichinin v. City of Morgan Hill* (Cal. Ct. App. 2009)

H031019.)

55.   On January 12, 2010, all five City Council members were present at

defendant Lancaster Redevelopment Agency meeting (as the five board of

directors controlling the Agency) to witness the presentation orchestrated by

the Mayor.  The issue presented by the Mayor – played out by members of

City staff – with the risk of some audience members talking too long or

talking too directly on point, was whether a board, other than that chaired by

Linda Reynolds, existed and was in control of AVAAA, its members, and its assets, including the four buildings at Cedar and Lancaster Boulevard. AVAAA board of directors Linda Reynolds & Tonia Thompson were allowed to speak, briefly.  Other directors and officers of AVAAA at that time were:  Lyndon Easley, Steve Ponting, David Hasse, Monique Johnson, Tracee Estabrooke, and Evie Cook.  David Hasse, AVAAA's building manager and secretary/treasurer at the time, was not permitted to speak, though he presented a card requesting to do so.  It was David Hasse who was and is listed as the agent for service of process by the California Secretary of State.

56.  Since 1994, defendant Lancaster's Redevelopment Agency has held a note in the amount of $250,000 secured by a deed of trust on the Cedar Center properties.   Since January 14, 2010 the defendant City of Lancaster and defendant Lancaster Redevelopment Agency, through its agents, including defendants Mitra Licciardi, Josie Alcoser, and Michelle Navarette and Does 1-15 have had possession of the Cedar Center.

57.  The "trial" of January 12, 2010 was tunefully played at the RDA meeting that night.  The finale ended with public safety officer D'Errico's opinion that the Center was not a safe place for kids (ignoring the fact that it had not been a safe place for kids after dark for years) and claiming an arrest for

battery (a citizen's arrest by the defaulting tenant, Mitra Licciardi, against an almost eighty year old, frail man – who had volunteered as the assistant building manager), theft and drug possession (neither of which had any merit as against the then AVAAA building manager, Mike Boyd) as part of the case. In addition, the public safety issue was irrelevant as to whether an "Eric Perry" board existed, let alone was in charge of AVAAA.

58. In the meantime, the individuals who comprised the "Linda Reynolds board", including Linda Reynolds, Evie Cook, Lyndon Easley, Tracee Estabrooke, Monique Johnson, Steve Ponting, & Tonia Thompson, were defamed and disparaged as being associated with drugs, prostitution, and running a criminal enterprise.

59. On April 13, 2010 – the same day the Mayor won re-election, the same house where the October 7, 2009 meeting of the usurpers took place (not at the Cedar Center as required by AVAAA by-laws), was discovered to be actively cultivating marijuana by the Los Angeles County Sheriff's Dept.

60. In an April 26, 2010 article published by the *Antelope Valley Press*, defendant's *Mayor, R. Rex Parris*, in his capacity as mayor of the defendant City of Lancaster, is quoted as saying the following:

*"If the city hadn't stepped in, they'd [the Linda Reynolds board] still be running prostitutes out of the back door, they'd still be selling*

*drugs, they'd still be using the place as a fencing operation – all*

*things the Sheriff's Department investigated and found evidence of."*

61.   At its January 12, 2010 meeting, defendant Lancaster Redevelopment

Agency Council and staff, found – after a hearing - that "the Eric Perry

Board" was the proper board because it "cooperated" with the City of

Lancaster.  This finding was made, under Color of Law, and without any

basis for doing so.   This finding was made, under Color of Law to gain an

advantage with its "disposition agreement" contract of 1994 and to take self-

help possession of the property under the note and deed of trust.

62.  The defendant Lancaster Redevelopment Agency (RDA) recognized the

false, usurper board (the "Eric Perry board") – and set the "Eric Perry board"

up to have them lock out the true AVAAA board, including plaintiffs.  That

false, usurper board recognized by the defendants included City/RDA

employee Mike Rosa.  That false, usurper board then changed the locks on

the Cedar Center and locked out the officers and directors of AVAAA,

including Evie Cook, Lyndon Easley, Tracee Estabrooke, Monique Johnson,

Steve Ponting, & Tonia Thompson. That false, usurper and the RDA and has

been in possession of the property ever since.

63.   The reason the City's employees gave for recognizing the "Eric Perry"

board was not to set up the City's own marijuana dispensary, but rather it

was stated it was because "the Eric Perry board" had been cooperative with the defendant City and the defendant Lancaster Redevelopment Agency. In addition, the City's Mayor noted the property had gone "into escrow" as of January 9, 2010, with a buyer named Doug Martin. This was in reaction to the City and its Redevelopment agency's antics – including trying to force directors onto AVAAA. This forced sale was not for market value and should the Courts enforce same, AVAAA will have suffered additional damages.

64.  **Amendment V** to the United States Constitution states:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; **nor shall any person** be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor **be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.**"

65.  **Title** 42 U.S.C. § 1983 provides in part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

66.  Local governments "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658, 690.

67.  The Lancaster Redevelopment Agency, along with the City of Lancaster, has taken over AVAAA's property since January 14, 2010, without compensation.

68.  Evie Cook, Lyndon Easley, Tracee Estabrooke, Monique Johnson, Steve Ponting, & Tonia Thompson – as officers and directors of AVAAA – had a real property interest in the AVAAA offices.  Where the owner temporarily loses all use of his or her property because of an unreasonable delay in the regulatory process, there may be a "taking" in the constitutional sense, and the owner can recover damages even though the taking is merely temporary. *First English Evangelical Lutheran Church of Glendale v. Los Angeles County, Cal.* (1987) 482 U.S. 304, 316-322.[2]  Further, a property owner is not required to suffer a diminution in the value of his or her property or lose the value of its use when the activities of a public agency are grossly

---

[2] Miller and Starr California Real Estate 3rd Edition, section 30:17 (page 30-81).

unreasonable and oppressive.   *Klopping v. City of Whittier*, (1972) 8 Cal.3d 39, 45. [3]

69.   The defendants City of Lancaster and its Redevelopment Agency's actions have resulted in Evie Cook, Lyndon Easley, Tracee Estabrooke, Monique Johnson, Steve Ponting, & Tonia Thompson suffering damages to their respective reputations and businesses.

70.   Specifically, as to damages, we begin with Evie Cook's claim, in her own words:

**"My particular issue is damages for loss of wages incurred:**
***Problem:***

71.   From September 1, 2009 to June 30, 2010, I estimate I have spent 300 days doing something every single day regarding this situation—anything from a few emails or phone calls to writing off the entire day travelling from Santa Clarita to Lancaster to meet with the board or other members about these issues, and everything in between. In the last month it has increased greatly as we prepare for trial, do depositions and do research to assist our attorney.

72.   300 days times an hour a day is 300 hours.  The additional days that I noted how many hours I spent dealing with this during June 2010 alone is 89 hours.  Other meetings and lengthy phone calls, email and explanations easily total an additional 300

[3] Ibid, section 30:17 (page 30-80 to 30-81)

hours since September 2009. I could be more exact but I don't want to have to dig around in my mind and recall all the dirt and nastiness that has been generated that I have had to deal with. As of this date it's 689 hours at $75 per hour which rounds off at $52,000.00.

73.   I (Evie Cook) am a graphic artist and designer, and fine artist. I am capable of a very wide spectrum of art and design work, ranging from business cards and fliers to portraiture and traditional oil painting, and high-end digital visual effects work. Given the economic times, I won't turn down a small job, but I make the best money doing VFX work. ($75.00 an hour). Some of my recent work can be seen in *"Life After People"* on the History Channel and in Steve Carell's film *"Date Night."*

74.   Visual effects work is usually the most challenging for me, the most fun and also my favorite type of work. Since I have had to spend hundreds of hours dealing with the selfish and dishonest actions of the city and their partners in crime called the Cedar Performing Arts Academy (CPAA), this has cut into my ability to promote myself and stay in touch with my best clients. There were times where I would have to drop everything and deal with an AVAAA issue caused by these people on an emergency basis.

75.   By nature of simply being on the AVAAA board and being attacked in this way, I have been forced to wear some sort of hat called *"Preventing Certain People from Being Dishonest and Criminal"* and that is NO fun compared to the work I could have been doing. I see no reason to charge any less than $75 an

hour to do something I am forced into that I don't enjoy doing in the least.

76.   I have not experienced any physical ill health as a result of the mental strain at this time.  However, I have experienced large amounts of lost valuable time, creative frustration and harm to my career.

77.   Additionally, my only living close relative, my father, has a level of dementia that causes him much worry and mental instability.  He is very physically challenged and wheelchair bound.  The time I am able to spend with him has been lessened and in his last years (he's 89) he has every right to be able to see me as much as possible.  I can't give that time back to my dad but I can hope to impinge upon those who think their own selfish desires are achievable by stamping all over the rights of others and lessening the quality of those lives.

78.   My father is wheelchair bound with very serious rheumatoid arthritis and now would need a male assistant to come along with us like I have had to do in the past when transporting him. I would have to rent a large car or driver service to be able to fit him into a vehicle.   I would also see that he gets some special services and treatment in his assisted living residence as a payback for the loss he has felt.  It is just not acceptable that he cannot see me after putting up with my absences all these months which he does not even fully understand. All he knows is that I am not there and gets very sad about it.

79.   Had the city employees and officials and the CPAA people simply followed the bylaws of AVAAA, the CA Corporate Code or the laws of the land I would not have had to lessen my

time with my dad in any way. Their concerns presented in writing to the 2009/2010 Reynolds AVAAA board, on which I serve as Trustee, (as opposed to the outgoing Boyd/Reynolds 2008/2009 Board) would have been listened to in proper board meetings and addressed (at my own insistence if no one else's) and they would have been surprised to find that this latest Reynolds AVAAA board had already started to make right many of the things that had been allowed to go wrong in the two years prior.

80.   Nothing in writing ever came from CPAA or the city to the new 2009/2010 AVAAA board headed by Linda Reynolds board. The entire new Linda Reynolds' board was judged as guilty and slandered in newspapers and city meetings despite nothing being turned up in months of "investigation." The accusations and rumors were that we were running drugs, prostitution and illegal weapons out of our art gallery, the whorehouse! While pushing forward the rumors, city associates conspired with CPAA people to take over the board I am on and for all intents and purposes steal the association's buildings away from its members.

81.   What this does to me in my heart has been the main thing that has caused me mental distress and anguish, coupled with the defamatory remarks. Not only do I need to endure the attacks and dishonesty, but also upsetting fits and intense desperation from my dad because of them. To think this does not then also affect my creative process is extremely unrealistic."

82.  Lyndon Easley has suffered similar damages.  A tenant in the AVAAA building in October, 2009, Lyndon Easley and his businesses, including Lyndon Easley Entertainment Productions, L.L.C., and Bianca Records, were forced out of the buildings by the City of Lancaster and the City of Lancaster Redevelopment Agency tactics, including the antics of Mitra Licciardi and the CPAA.

83.  Mr. Easley works with a number of performing artists, including professionals and amateurs of all ages.  His group and clients have performed concerts at most Antelope Valley venues, including AVUHS District High Schools, LPAC, the Antelope Valley Fair, and the Chimbole Center in Palmdale.

84.  Tracee Estabrooke has likewise been damaged.  Because she would not go along with the Lancaster Redevelopment Agency's and City's agents, she has been threatened, retaliated against (a single mom, Child Protective Services has been over to investigate her twice since January, 2010), and made to endure constant stress.

85.  Monique Johnson possesses a top secret clearance in order to maintain her job in Aerospace.  Also a single mom, she too, was threatened with the loss of her job.

86. Steve Ponting, a Vietnam Veteran, in his own words, describes his damages
as well:

87. "During the last week in September 09, I received a phone call
from a lady named Bonita saying she heard from one of her
friends that I was an Artist looking for someone to promote my
paintings. I asked her "Who are you again?" She said she was a
member of AVAAA and the gallery manger and said she
looked at my website and wanted to book me into the gallery at
Cedar Center gallery liking what she saw. I told her I was
booked for March 2010 at Lakes and Valleys Art Gallery but I
was open for January or February. She gave me January after
Brian Lockett's December art show there.

88. The next day Bonita called and said that she is resigning
because of all the crap the tenant (Mitra Liccardi ) was causing
and had enough. I asked her "So what's that do for my
booking?" She said that I should still be booked. She asked if I
wanted to be a board director saying there were openings and
that AVAAA needed help.

89. I went to the Cedar Center Art Gallery on Friday 1/22/10 at
1:10 pm to open the doors to the gallery for the regular
scheduled viewing of Brian Lockett's and my art show and
greeting the public citizens of Antelope Valley.  When I got
there, there were four adults standing in the rain waiting to get
in to see the show.

90. I immediately apologized for being 10 minutes late because of
a doctor's appointment I was running late.  They said not to
worry as I tried to unlock the door with the key that opened the

door for the last two weeks only to find the locks had been changed. Apologizing again about them having to stand in the rain I immediately called David Hasse, the Building Manager, to ask if he changed the locks he said no. I then told the four people waiting that I was going go see Josh Mann at the AVBOT and find out what was going on. Marilyn Dalrymple, Paul and Carol Reukauf said they would wait wanting to see the first art show of 2010. The other gentleman just left and did not wait to see the show.

91. When I walked into Josh Mann's office I looked at the secretary then turned and approached Josh's desk stopping about 5 feet from it. I asked "What the heck is going on?" "I tried my key and it didn't open the door. I'm angry at the idea that someone locked me out after having the newspaper announce that our show was going on and I am ready to go to the T.V. media, newspapers and anybody else because this is wrong. I got four people standing in the rain waiting for me to open the door." Josh said, "Calm down. We will find out who has the key to open the door." He called someone at the city with no response. Then he called the city manager's office to get Eric Perry's phone number, but had to call someone else who he was very friendly to before he got it. He then called Eric who said he would be down about 2 pm. I said "That is too long. I have people standing in the rain." Josh handed me his phone to talk directly to Eric who told me he would be down about 2 p.m. I reiterated that was not acceptable to me, "There are people standing in the rain." He said he would come right away and I hung up handing the phone back to Josh. As I

was leaving I turned and said "I have this painting of Rex that everyone but the city people who I gave personnel invitations to, delivering them myself, has seen.  I am puzzled why a city Mayor and city council members who say they are for art failed to even send someone to see the first art show of 2010 in downtown right next door to were they work."  I also added before I closed the door "one day the politics will end but the art will still be here.  It's a shame that you haven't attended.  You need to come, Josh".  He said he would try to get there.

92. When I returned to the Gallery, I again apologized for the unprofessional behavior that was taking place and said Eric Perry would be right down.  After 10 minutes I apologized for Eric still not being there. The patrons decided to leave and get something to eat promising to return later to see our art.  Eric showed up about 15 minutes after that.  I demanded he work out with whomever to get me a key so I can open when I am supposed to.  He said "our general meeting is in two weeks we can address it then".  I said "Not acceptable.  You need to talk to whoever you need to get me a key now. " He said "Our board meeting is next week we can address it then." Again I said "I need to have access to my paintings now, they are listed on the website for over $140,000 and I will hold you responsible for anything happening to them since you now control the building." Perry promised nothing would happen to them.

93. After I got in and set up, I was talking with several visitors answering their questions when Eric came in and introduced his wife Nina would began controlling the conversation keeping my focus off the visitors.  They left and she said she was

AVAAA's gallery manager and promised to open the door Saturday on time. I stated to Eric "they needed a contract for my art and were responsible for its safety". He said it was safe and they would be on time.

94. When I arrived Sat 1/23/10 at 1:01 there were two people waiting for the doors to open. The female said Nina was on her way and would be here in a moment asking "Are you Steve Ponting" I said yes. I recognized the male to be Steven Lopez, a college contact David and I did an art show with. He said he heard we had a show and wanted to see it. After 15 minutes I asked the female to call Nina and find out why she wasn't here after promising me she would be on time. About 1:30 she arrived stating that she was here at one but I was not. I told her I was here at 1 minute after 1pm and she said "Oh I must have just missed you".

95. Steven Lopez stayed all day and commented that these people were very unprofessional. I closed by myself locking all the doors. I met Eric Perry, who said my art was safe and he would be on time at 1pm Sunday to unlock for me. He and another male went into the gallery as I left.

96. On Sunday, 1/24/10, I arrived at 1 pm to find no one there and I had to park across the street unable to unload because of all the cars. I called Nina Perry and she called Eric Perry who came out of the other building and unlocked leaving my art open alone until I re-parked My car and was able to go and unload. I had several visitors that were friends. Two homeless men the Eric Perry group hired to clean the hall also visited. As I locked up to leave, I told Eric about them being out back but I

locked the door.  Then Eric Perry told me "the back door
doesn't lock anymore because the chamber was removed".

97. I made him show me and said "GREAT you are still responsible for
my art again, saying it's listed at over $140,000 on
www.fineartamerica.com's website" and also through my web site,
http://steveponting.com.



98. Perry and I tried to secure the door but were unable to.  He called
the guy who changed the locks for him and as I left as he was
trying to put a lock cover over the chamber.

99. As I told Eric Perry "I have several schools bringing children to see my art show Thursday the 28th and Friday the 29th at 10am for a private tour" and to unlock for me at 9:30 am. "O.K." he said.  I left depressed at the sad state of affairs that the city and its RDA caused by trying to put in a false board to take AVAAA away from those people who for 62 years worked so hard to preserve it.

100. The Defendants City of Lancaster and the City of Lancaster Redevelopment Agency went one step further when it came to Tonia Thompson.  Her husband was fired by Home Depo based on allegations made by the City and the RDA's agent, defendant Mitra Licciardi.   These related to the presence of asbestos in the tile that was being removed on or about October 1, 2009.

101.  The name or names of the public employee or employees causing these and other injuries, damage, or loss, include Mike Rosa and Jason Caudle.

102. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the tort claims is $287,000.00 each for damage to the business, past, present, and future of Evie Cook, Lyndon Easley, Tracee Estabrooke, Monique Johnson, Steve Ponting, & Tonia Thompson.  This includes the temporary taking and any federal claims associated with the City of Lancaster's violation of the Constitution of the United States, the common law, and under color of law.

103. **SECTION II – PURPOSES** for Antelope Valley Allied Arts Association

**The purpose of this Organization shall be to further the appreciation of all the arts; to provide educational and entertaining programs for its members, and to promote special activities pertaining to art in the Antelope Valley.  It is not organized for the private gain of any person(s).**

104. Plaintiff conducted a proper election, attended by over 20 paid, voting members, on August 8, 2009.

105. On August 30, 2010 another election was held, attended by over 20 paid, voting members.

106. Today, through changes, resignations, and the like, the AVAAA board consists of the following leaders:

President: Jeffrey D. Moffatt, Esq.

1st Vice:  Tonia Thompson

2nd Vice:  As may be named.

3rd Vice:  As may be named.

Parliamentarian:  Steve Ponting or as may be named.

Ways and Means Chairperson:  Lyndon Easley

Gallery Chairperson: Tracee Estabrooke

Treasurer:  Staretta Moffatt

Corresponding Secretary:  As may be named.

Recording Secretary:  As may be named.

Trustee:  Evie Cook

Trustee:  As may be named.

# FIRST CAUSE OF ACTION: DEFAMATION

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster

And Does 1 to 50, inclusive)

71. Plaintiffs incorporate the foregoing paragraphs by reference and add the following:

72. In an April 26, 2010 article published by the *Antelope Valley Press*, Mayor R. Rex Parris, in his capacity as mayor of the City of Lancaster, is quoted as saying the following:

> **"If the city hadn't stepped in, they'd [the Linda Reynolds board] still be running prostitutes out of the back door, they'd still be selling drugs, they'd still be using the place as a fencing operation – all things the Sheriff's Department investigated and found evidence of."**

73. Plaintiffs are informed and believe no probable cause was ever found of any of these charges by the Sheriff's Department for anyone on the ANTELOPE VALLEY ALLIED ARTS ASSOCIATION (AVAAA) board head by Linda Reynolds. The charges against the subject of the investigation, Mike Boyd, were dropped.

74. While Mr. Boyd was investigated, charges were dismissed due to a lack of evidence.

75. No warrant was ever issued for Linda Reynolds or anyone else on the ANTELOPE VALLEY ALLIED ARTS ASSOCIATION (AVAAA) board or any plaintiff.

76. At the January 12, 2010 Lancaster City Council meeting, Lee D'Errico stated the following:

> "there was property that had been reportedly removed without permission from the Cedar Center, reported as stolen and the property was recovered at Mr. Boyd's residence along with an amount of narcotics and a weapon…A relationship has been maintained with the Reynolds group and Mr. Boyd. Ms. Reynolds was approached and was told her board would be culpable and responsible for Mr. Boyd's legal fees."

77. The plain implication of the speech was that the ANTELOPE VALLEY ALLIED ARTS ASSOCIATION (AVAAA) board headed by Linda Reynolds was in league with and possibly being controlled by Mike Boyd, a person painted to be a pandering, drug dealing, and weapons dealing past president of AVAAA.

78. The Los Angeles County District Attorney dismissed all charges against Mr. Boyd due to a lack of evidence.

79. Mr. Boyd is not participating with the ANTELOPE VALLEY ALLIED ARTS ASSOCIATION (AVAAA) board headed by Linda Reynolds or her successor, Jeffrey D. Moffatt, Esq.

80. Mr. Boyd is not now, nor ever has been represented by AVAAA's counsel.

81. These statements are accusations of a criminal nature and are therefore slander/libel per se.

82. Plaintiffs are informed and believe that the ANTELOPE VALLEY ALLIED ARTS ASSOCIATION (AVAAA) board headed by Linda Reynolds board has been removed from AVAAA property by the Lancaster Redevelopment Agency Board (and the defendant, City of Lancaster City Council, sits as that Board) as a result of the defamatory statements.

83. Each of the ANTELOPE VALLEY ALLIED ARTS ASSOCIATION (AVAAA) Board members has suffered general and specific damages as a result of defendants' defamatory words and actions.

84. Plaintiffs are informed and believe that the annual budget for the City of Lancaster Redevelopment Agency is greater than the budget for the City of Lancaster itself ($244 million). A $10 million dollar street improvement project was recently completed in front of the AVAAA property, through the powerful Lancaster Redevelopment Agency. The project is part of the defendants' RDA and City of Lancaster's motivation for interference.

85. Defendants' agents' words and actions showed actual malice towards plaintiffs and were known not to be true at the time they were said. Therefore, plaintiffs seek punitive damages from defendants.

## SECOND CAUSE OF ACTION: VIOLATION OF TAKINGS CLAUSE

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster And Does 1 to 60, inclusive)

86. Plaintiffs are informed and believe and incorporate the foregoing paragraphs by reference and add the following:

87. The Fifth Amendment of the United States Constitution states, in relevant part,

> "...nor shall private property be taken for public use, without just compensation."  This clause applies to the states through the Fourteenth Amendment, which states "...nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

88. Defendant City is a government actor as the managing entity for the City of Lancaster.

89. Plaintiff Antelope Valley Allied Arts Association is a private, nonprofit corporation registered with the State of California, to further the arts in the Antelope Valley.

90. On or about January 12, 2010, Mayor R. Rex Parris, acting in his capacity as Mayor at the Lancaster Redevelopment Agency's City Council meeting, stated that the Sheriff's Department would be notified the Eric Perry board was the viable board and that the City would pick up the legal fees to defend the Eric Perry board.

91. On or about January 14, 2010, Defendant City, through its agents, including Mike Rosa, defendants Navarette and Alcoser, ordered the locks changed on the building utilized and owned by the Antelope Valley Allied Arts Association ("AVAAA").

92. In an article in the *Antelope Valley Press*, dated April 26, 2010, Mayor Parris admitted he had provided financial support to the Eric Perry board and that the potential sale of the building led the Mayor to "recommend the seating of a new board."

93. In the same article, the Mayor stated "If the city hadn't stepped in, they'd still be running prostitutes out the back door, they'd still be selling drugs…So of course we got involved."

94. In a June 2010 article from the *Antelope Valley Press*, City Manager, Mark Bozigian stated "The board will benefit from having city staff support, marketing support and resources to help the board maintain the center."

95. These statements illustrate the City of Lancaster as the true possessor of the property.

96. The City of Lancaster was public in their admission that they ousted the AVAAA board, a nonprofit corporation, and placed their own board in office.

97. The duly-elected AVAAA board was deprived of its property, including office machines and files, without due process of law.

98. The AVAAA building is now being used for a public purpose: to promote the downtown redevelopment area of "Old Lancaster" and to promote the arts in Lancaster under the City of Lancaster's management.

99. AVAAA has lost all beneficial use of the premises and has not been compensated for the taking instituted by the City of Lancaster.

## THIRD CAUSE OF ACTION: VIOLATION OF CIVIL RIGHTS

### (Violation of Civil Rights) As against all defendants

100. Plaintiffs are informed and believe and incorporate by reference the previous paragraphs and attachments.

101. Defendants, and each of them, have under color of law, deprived plaintiffs of their property including 44845 Cedar Avenue, 44851 Cedar Avenue, 44857 Cedar Avenue ("Cedar Center"), and 606 Lancaster Boulevard, their liberty

(threat of arrest), and their livelihoods (as evidenced by decrease in work and terminations from jobs).

102. Individual defendants were acting on behalf of the government defendants.

103. Defendants, and each of them, began a concerted attack on AVAAA, its officers, directors, and trustees, on or after the August 28, 2009 meeting.

104. Government defendants' mayor demanded keys from AVAAA's building manager on or before the Halloween weekend of October 2009, under color of law.

105. Before government defendants' mayor was denied the keys, he acted to seize control of the Cedar Center, taking it from plaintiffs through employees and/or agents of the City and RDA and giving it to the individual defendants in this case – before outright taking the property on June 21, 2010.

106. After government defendants' mayor was denied the keys in October, 2009, he continued to act to seize control of the Cedar Center, both through employees of the City and RDA as well as through the individual defendants in this case.   Ultimately, defendants took total control on January 14, 2010, though defendant Licciardi was to have departed from the Cedar Center premises by October 1, 2009.

107. Defendants' actions are in violation of plaintiff's civil rights – depriving plaintiff of life, liberty, and/or property, under color of law, in violation of 42 USCS 1983.

108. Defendants' actions were taken under color of their position as agents for government entities or on behalf of government agencies.

109. Plaintiffs have been damaged as a result of defendants' actions.

## FOURTH CAUSE OF ACTION: FORCIBLE ENTRY
Forcible Entry

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster

And Does 1 to 70, inclusive)

110. Plaintiffs are informed and believe and incorporate the foregoing paragraphs by reference and add the following:

111. On January 12, 2010, plaintiffs were in actual and peaceful possession of the premises located at 44845 Cedar Avenue, 44851 Cedar Avenue, 44857 Cedar Avenue "Cedar Center", and 606 Lancaster Boulevard (all owned by AVAAA) – legally described as

> "Lots 8 and 9 in Block 10, Town of Lancaster, in the City of Lancaster, County of Los Angeles, State of California, as shown on map filed in Book 5, pages 470 and 471, miscellaneous Records, in the Office of Registrar-Recorder of said County."

in the City of Lancaster, County of Los Angeles ("the premises").

112. On or about January 14, 2010, and without plaintiffs' consent, defendants

Lancaster Redevelopment Agency and City of Lancaster, through their

agents, MITRA LICCIARDI, individually and dba CEDAR PERFORMING

ARTS ACADEMY (CPPA), Mike Rosa and Eric Perry, and others on behalf

of the RDA and the City of Lancaster, after peaceably entering the premises,

turned out plaintiff, AVAAA, and the true board of directors and president of

AVAAA, Linda Reynolds and her board: 1st Vice President: Monique

Johnson; 2nd Vice-President: Tonia Thompson; 3rd Vice-President: Vacant;

Parliamentarian: Steve Ponting; Ways and Means Chairperson: Lyndon

Easley; Gallery Chairperson: Tracee Estabrooke; Treasurer: David Hasse;

Recording Secretary: David Hasse; and Trustee #1: Evie Cook.

113. Defendants took possession of the premises, and continued in possession to

June 21, 2010 at 5:00 p.m. at which time defendant Lancaster Redevelopment

Agency took over the property outright, without plaintiffs' consent.

114. Defendant RDA took over the property to render any judgment for

possession granted after an unlawful detainer trial, moot. Defendant RDA

continues in possession today.

115. Plaintiffs have suffered general damages as a result of defendants' forcible

detainer.

# FIFTH CAUSE OF ACTION:
## FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

(Against Defendants Lancaster Redevelopment Agency , City of Lancaster,  Mitra Licciardi, and Does 1 to 70, inclusive)

116. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

117.  In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

118. Plaintiffs AVAAA signed a disposition agreement with defendant RDA in 1994.  The essential terms of the agreement include the fact that the RDA promised never to take possession of the AVAAA in the event of a dispute. (*See* Section 5.03 of Agreement, **Exhibit 6.)**

119. Defendant RDA violated the agreement, set up a false AVAAA board loyal to the RDA (complete with defendant City of Lancaster employees "appointed" to it) and took covert possession of the AVAAA property (Cedar Center) on January 14, 2010.  Defendant RDA further violated the agreement

with its letters from counsel in April, 2010, and on June 17, 2010 when it

seized possession outright of the Cedar Center on June 21, 2010 at 5:00 p.m.

120. Further, defendants promised to remove or assist in the removal of any

unfriendly environmental substances including underground storage tanks and

asbestos.

121. AVAAA and its officers and directors, plaintiffs Linda Reynolds, Tonia

Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and

Lyndon Easeley claim: the City of Lancaster and Lancaster Redevelopment

Agency violated the duty to act fairly and in good faith.

122. AVAAA and its officers did all, or substantially all, of the significant things

that the contract required to do or were excused from having to do those

things;

123. All conditions required for defendant RDA's performance have occurred.

124. That defendant RDA interfered with AVAAA and its officers and director's

right to receive the benefits of the contract; and

125. That AVAAA and its officers and directors were harmed by Defendants

Lancaster Redevelopment Agency and the City of Lancaster's conduct.

126. Plaintiffs AVAAA and its officers and director's have suffered damages for

breach of contract including $250,628 plus attorney's fees and costs.

# SIXTH CAUSE OF ACTION:  INTENTIONAL MISREPRESENTATION

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster

And Does 1 to 70, inclusive)

127. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

128. Defendant Lancaster Redevelopment Agency made false representations that harmed AVAAA and its officers and directors.

129. Among these representations are the ones made since March 25, 1994:  That the Defendants Lancaster Redevelopment Agency and the City of Lancaster would remove the underground petroleum storage tank.  That tank remains on the property, in violation of 42 USC Sec. 6991 et. seq.

130. Plaintiffs also bring this action under 42 USC Sec. 6991e as private attorney general.  As such, plaintiffs are entitled to both attorney fees and penalties of up to $10,000 per day from December 22, 1998 forward.

131. Defendants Lancaster Redevelopment Agency and the City of Lancaster failed to disclose there were problems with asbestos in spite of their knowledge asbestos was present on the property – and as a result, while the underground tank was required to be removed, nothing was said about asbestos.

132. Defendant Lancaster Redevelopment Agency also represented to AVAAA and its officers and directors, plaintiff that an important fact was true: That the Lancaster Redevelopment Agency would abide by the provisions of section 5.03 of the disposition agreement. Specifically they agreed to not seize the property after they were informed of the litigation AVAAA had to bring to get their property back. Further, they agreed they would not seize the property due to "acts or omissions" of the City of Lancaster and the RDA. These acts included defendants and their agents creating chaos in or around October 1, 2009 concerning the AVAAA board and the repairs that were to begin then, and, "acts or failures to act" of the City of Lancaster and the RDA and its agents in interfering with the lawful operation of AVAAA's board by creating a usurper board and then holding the usurper board as legitimate at a public meeting while alleging the true board was running a criminal enterprise.

133. Further, defendants promised to remove or assist in the removal of any unfriendly environmental substances including underground storage tanks.

134. These representations likely were considered material to the formation of the agreement at the time due to the amount of the disposition agreement that pertains to environmental remediation concerns.

135. Defendants City of Lancaster and the RDA's representations were false.

136. Defendant City of Lancaster and the RDA knew that the representations were false when made, or were made recklessly and without regard for the truth.

137. Defendant Lancaster Redevelopment Agency intended that AVAAA and its officers and directors, plaintiffs, rely on the representations.

138. AVAAA and its officers and directors, plaintiffs, reasonably relied on Defendant City of Lancaster and the RDA's representations.

139. AVAAA and its officers and directors, plaintiffs, were harmed; (damaged).

140. AVAAA and its officers and directors, plaintiffs', reliance on Defendant City of Lancaster and the RDA's representations were a substantial factor in causing plaintiffs' harm.

141. AVAAA and its officers and directors suffered damages in total amount which will be ascertained at a later date.

**SEVENTH CAUSE OF ACTION:  NEGLIGENT MISREPRESENTATION**

(Against the Defendant Lancaster Redevelopment Agency and

DOES 51 TO 100 inclusive)

142. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

143. AVAAA and its officers and directors, claim they were harmed because Defendant Lancaster Redevelopment Agency negligently misrepresented important facts.

144. Among these representations are the ones made since March 25, 1994: That the Defendants Lancaster Redevelopment Agency and the City of Lancaster would remove the underground petroleum storage tank. That tank remains on the property, in violation of 42 USC Sec. 6991 et. seq.

145. Plaintiffs also bring this action under 42 USC Sec. 6991e as private attorney general. As such plaintiffs are entitled to both attorney fees and penalties of up to $10,000 per day from December 22, 1998 forward.

146. Another hidden negligent misrepresentation made by the Defendants Lancaster Redevelopment Agency and the City of Lancaster is that there were no problems with asbestos – and as a result, while the underground tank was required to be removed, nothing was said about the presence of asbestos.

147. Further, defendants promised to remove or assist in the removal of any unfriendly environmental substances including underground storage tanks, and impliedly – things not revealed that defendants knew or should have known about.

148. Defendant Lancaster Redevelopment Agency's  representations were not true;

149. Defendant Lancaster Redevelopment Agency had no reasonable grounds for believing the representations were true when made.

150. Defendant Lancaster Redevelopment Agency intended that AVAAA and its officers and directors, rely on this representation;

151. AVAAA and its officers and directors, reasonably relied on Defendants' representation;

152. AVAAA and its officers and directors, plaintiffs, were harmed.  (*See Exhibit 8* – minimum estimate of $1.2 million to rehabilitate the Cedar Center)

153. AVAAA and its officers and directors' reliance on Defendant Lancaster Redevelopment Agency's representation was a substantial factor in causing plaintiffs' harm – which continues to this day.


**EIGHTH CAUSE OF ACTION:  FRAUD (Promissory)**

(Against the Defendant Lancaster Redevelopment Agency and DOES 51 TO 100 inclusive):

154. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

155. Defendant Lancaster Redevelopment Agency made a promise to AVAAA and its officers and directors, plaintiffs, that neither the Lancaster Redevelopment Agency nor the City of Lancaster would seize the Cedar Center in the event of a dispute.

156. That the Defendants Lancaster Redevelopment Agency and the City of Lancaster would remove the underground petroleum storage tank. That tank remains on the property, in violation of 42 USC Sec. 6991 et. seq.

157. Plaintiffs also bring this action under 42 USC Sec. 6991e as private attorney general. As such plaintiffs are entitled to both attorney fees and penalties of up to $10,000 per day from December 22, 1998 forward.

158. In addition, Defendants Lancaster Redevelopment Agency and the City of Lancaster failed to disclose the known presence of asbestos on the property – and as a result, while the underground tank was required to be removed, nothing was said about the presence of asbestos.

159. Further, defendants promised to remove or assist in the removal of any unfriendly environmental substances including underground storage tanks,

and impliedly – things not revealed that defendants knew or should have known about.

160. Defendant Lancaster Redevelopment Agency's representations were not true;

161. Defendant Lancaster Redevelopment Agency had no reasonable grounds for believing the representation was true when made.

162. Further, defendants promised to remove or assist in the removal of any unfriendly environmental substances including underground storage tanks and things unseen.

163. This promise was important to the transaction to being able to maintain AVAAA, its membership, and its income stream, among other reasons.

164. The Defendants Lancaster Redevelopment Agency and the City of Lancaster did not intend to perform this promise when made.

165. The Defendants Lancaster Redevelopment Agency and the City of Lancaster intended that AVAAA and its officers and directors and their successors, including the individual plaintiffs, rely on this promise.

166. AVAAA and its officers and directors, plaintiffs, reasonably relied on the Defendants Lancaster Redevelopment Agency and the City of Lancaster's promises.

167. The Defendants Lancaster Redevelopment Agency and the City of Lancaster did not perform the promised acts.

168. AVAAA and its officers and directors, (plaintiffs) were harmed.

169. AVAAA and its officers and directors reliance on the Defendants Lancaster Redevelopment Agency and the City of Lancaster's promises was a substantial factor in causing them harm.

170. AVAAA and its officers and directors have suffered damages.

**NINTH CAUSE OF ACTION: FRAUDULENT MISREPRESENTATION**

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster And Does 1 to 70, inclusive)

171. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

172. Defendant Lancaster Redevelopment Agency is responsible for a representation that was not made directly to plaintiffs as it made the representation to a group of persons reasonably expecting that it would be repeated to plaintiffs, as successor board members of AVAAA.

173. This includes representations that these defendants would remove the underground storage tanks located on the Cedar Center Property.

174. Further, defendants made representations as to asbestos in a general nature that led plaintiffs to believe there was no asbestos problem with the Cedar

Center buildings.  It only became an issue when Defendant Licciardi – while working as agent for the defendants, City and RDA, raised the issue in late September, 2009.

175. The Defendants Lancaster Redevelopment Agency and the City of Lancaster knew of the asbestos as well as lead issues two years before they signed the Disposition Agreement. (**Exhibit 8** – Inspection Report).

176. At the time the promises were made, the defendants had no intention of keeping them.

177. It is only because of a complaint filed with the EPA in or about August, 2010 that the defendants have finally taken some action with respect to the tanks.

178. As a result of defendants' conduct, Plaintiffs have suffered actual damages in excess of $1,000,000.  (*See* **Exhibit 8**).

**TENTH CAUSE OF ACTION: INDUCING BREACH OF CONTRACT**

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster Michelle Navarette; and Josie Alcoser and  Does 1 to 70, inclusive)

179. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

180. Plaintiffs AVAAA and its officers and directors, plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley claim that Defendants Lancaster Redevelopment Agency, City of Lancaster, and Does 1-99 intentionally caused defendant Mitra Licciardi to breach her contract with AVAAA for rent of the premises, and for not leaving the premises upon expiration of the rental agreement.

181. Defendant Lancaster Redevelopment Agency and the other defendants knew of the contract.

182. Defendant Lancaster Redevelopment Agency intended to cause defendant Mitra Licciardi to breach the contract.

183. Defendant Lancaster Redevelopment Agency's conduct caused defendant Mitra Licciardi to breach the contract;

184. Plaintiffs were harmed.

185. Defendant Lancaster Redevelopment Agency's conduct was a substantial factor in causing Plaintiffs' harm.

186. As a result of defendants' conduct, Plaintiffs have suffered damages.

**ELEVENTH CAUSE OF ACTION: INDUCING BREACH OF CONTRACT**

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster Mitra Liccardi, Josie Alcoser, Michelle Navarette, and  Does 11 to 75, inclusive)

187. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

188. Plaintiffs AVAAA and its officers and directors, plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley claim that Defendants Lancaster Redevelopment Agency, City of Lancaster, and defendant Mitra Licciardi caused clients of Tonia Thompson's agency and clients and professional contacts of other plaintiffs to breach their contracts with Thompson, AVAAA and the other plaintiffs.

189. Plaintiffs AVAAA and its officers and directors, and customers, members of AVAAA, had contracts with customers, clients, professionals, and with the public in general (through public art shows, workshops for school classes, other workshops, and artists' displays).

190. Defendants Lancaster Redevelopment Agency, City of Lancaster, and defendant Mitra Licciardi, Josie Alcoser, Michelle Navarette, and the other defendants knew of the contracts.

191. Defendants Lancaster Redevelopment Agency, City of Lancaster, and defendants Mitra Licciardi, Josie Alcoser, Michelle Navarette intended to cause customers, clients, professionals, and with the public in general, to breach the contracts.

192. Defendants Lancaster Redevlopment Agency, City of Lancaster, and defendants Mitra Licciardi, Josie Alcoser, and Michelle Navarette engaged in defaming the AVAAA board, seizing control of AVAAA with a false board, and threatening individual AVAAA board members.

193. Defendants Lancaster Redevelopment Agency's, City of Lancaster, and defendants Mitra Licciardi, Josie Alcoser, and Michelle Navarette's conduct caused customers, clients, professionals, and with the public in general, to breach the contracts.

194. Plaintiffs were harmed by defendants' conduct.

195. Defendants Lancaster Redevelopment Agency's, the City of Lancaster's, and defendants Mitra Licciardi, Josie Alcoser, Michelle Navarette's conduct was a substantial factor in causing Plaintiffs harm.

196. As a result of defendants' conduct, Plaintiffs have suffered damages.

## TWELFTH CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

(Plaintiff AVAAA and its officers and directors, plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley

Against Defendants Lancaster Redevelopment Agency and the City of Lancaster, Mitra Liccardi, Michelle Navarette; and Josie Alcoser and Does 1 to 70, inclusive)

197. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

198. "The tort of interference with prospective economic advantage protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage <u>does not require proof of a legally binding contract</u>. The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126, internal citations omitted.)

199. Plaintiffs AVAAA and its officers and directors  claim that Defendant Lancaster Redevelopment Agency, the City of Lancaster, MITRA LICCIARDI, individually and dba CEDAR PERFORMING ARTS, Michelle Navarette, and Josie Alcoser intentionally interfered with an economic relationship between clients or customers of Tonia Thompson and Tonia Thompson, as well as between clients or customers of Lyndon Easly and Lyndon Easly, between clients or customers of all other plaintiffs and plaintiffs that probably would have resulted in an economic benefit to Plaintiff AVAAA and the other plaintiffs.

200. Plaintiffs AVAAA and its officers and directors, and customers, members of AVAAA, and the public in general (through public art shows, workshops for school classes, other workshops, and artists' displays) were in economic relationships that probably would have resulted in an economic benefit to Plaintiffs AVAAA and its officers and directors.

201. Defendants knew of the relationships.

202. Defendants intended to disrupt the relationship.

203. Defendants Lancaster Redevelopment Agency and the City of Lancaster engaged in wrongful conduct – including sending their employee, Lee D'Errico, to set up a board that would "cooperate" with defendants.

204. Defendants Lancaster Redevelopment Agency and the City of Lancaster engaged in wrongful conduct – inducing the creation of a false board that even today these defendants promote the theft of identity of AVAAA.

205. Defendants Navarette, Alcoser, and Licciardi engaged in wrongful conduct, deliberately interrupting the quiet enjoyment of leaseholds the individual plaintiffs had at the Cedar Center, and deliberately interfering with clients, customers, professional relationships and public relationships.

206. The relationships were disrupted by defendants.

207. Plaintiffs were harmed.

208. Defendants' wrongful conduct was a substantial factor in causing Plaintiffs' harm.

209. The exact amounts of said damages are on-going and not currently completely determined; thus, Plaintiffs will seek leave of court to amend this pleading and/or otherwise provide the specifics thereof when determined or according to proof at time of trial.

## THIRTEENTH CAUSE OF ACTION:  NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### AGAINST ALL DEFENDANTS

210. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

211. Plaintiffs AVAAA and its officers and directors, plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley claim that Defendant Lancaster Redevelopment Agency and the City of Lancaster negligently interfered with a relationship between them and clients, customers, professional contacts, members of AVAAA, and the public in general (through public art shows, workshops for school classes, other workshops, and artists' displays) that probably would have resulted in an economic benefit to Plaintiffs.

212. Plaintiffs AVAAA and its officers and directors, and plaintiffs' clients, customers, professional contacts, members of AVAAA, and the public in general were in an economic relationship that probably would have resulted in a future economic benefit to Plaintiffs AVAAA and its officers and directors.

213. Defendants knew or should have known of this relationship.

214. Defendant knew or should have known that this relationship would be disrupted if they failed to act with reasonable care.

215. Defendants failed to act with reasonable care.

216. Defendants engaged in wrongful conduct through deliberately interfering with some businesses (such as Licciardi's attack on Tonia Thompson's business, and failing to open the Art Gallery that was to be on display with the art of Steve Ponting) and misrepresenting the status of the AVAAA and its officers and directors.

217. The relationships were disrupted.

218. Plaintiffs were harmed.

219. Defendants' wrongful conduct was a substantial factor in causing Plaintiffs AVAAA and its officers and director's harm.

## FOURTEENTH CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

(Against Defendants Lancaster Redevelopment Agency and the City of Lancaster, Mitra Liccardi, Michelle Navarette; and Josie Alcoser and Does 1 to 70, inclusive)

220. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

221. Plaintiffs AVAAA and its officers and directors plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley claim that Defendant Lancaster Redevelopment Agency intentionally interfered with the contract between them and their customers, clients, professional contacts, and public contacts (including public display of art).

222. There was a contract between Plaintiffs AVAAA and its officers and directors plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley and their customers, clients, professional contacts, and public contacts (including public display of art).

223. Defendants knew of the contracts.

224. Defendants intended to disrupt the performance of the contracts.

225. Defendants conduct prevented performance or made performance more expensive or difficult.

226. Plaintiffs and its officers and directors, plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley were harmed;

227. Defendants' conduct was a substantial factor in causing Plaintiffs and its officers and directors, plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easley's harm.

## FIFTEENTH CAUSE OF ACTION: DECLARATORY RELIEF

## AGAINST ALL DEFENDANTS

228. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

229. An actual controversy exists between the plaintiffs and defendants because plaintiffs contend and defendants dispute several points listed below.

230. Plaintiffs AVAAA and its officers and directors, plaintiffs Linda Reynolds, Tonia Thompson, David Hasse, Tracee Estabrooke, Steve Ponting, Evie Cook, and Lyndon Easeley claim:

    a.    At all times relevant, the individual plaintiffs and Monique Johnson were the rightful officers and directors of the AVAAA;

b.      The defendants' actions, as stated previously, were wrongful – both in tort and in contract as well as a violation of civil rights, and defendants' actions also encouraged private actors – both on behalf of a public entity as well as for themselves, to engage in wrongdoing;

c.      The One Action Rule (CCP 726) mandates the Lancaster Redevelopment Agency reconvey the note and deed of trust to AVAAA.

d.      The Lancaster Redevelopment Agency has no right, title, or interest in 44845 Cedar Avenue, 44851 Cedar Avenue, 44857 Cedar Avenue, and 606 Lancaster Boulevard ("Cedar Center").

e.      The Lancaster Redevelopment Agency has violated and continues to violate the disposition agreement because it failed to remove the old fuel tanks imbedded in the property.

f.      The Lancaster Redevelopment Agency ("RDA") has violated and continues to violate the disposition agreement because it failed to remove and/or failed to disclose the presence of asbestos.


## SIXTEENTH CAUSE OF ACTION: MANDAMUS/INJUNCTION AGAINST DEFENDANTS CITY OF LANCASTER AND RDA, MICHELE NAVARETTE, JOSIE ALCOSER, MITRA LICCIARDI, as well as Doe Defendants 10-70

231. Plaintiffs are informed and believe and reallege the previous paragraphs pled herein and add the following:

232. On or about February 1, 2010, plaintiffs demanded that defendants RDA and City of Lancaster stop their wrongful (threatened) conduct and their continued farce of placing a usurper board in charge of AVAAA property and as described above.

233. Defendants' wrongful conduct, unless and until the court either mandates/prohibits the actions of the Lancaster City Council both as that body politic and sitting as the Redevelopment Agency (RDA) or otherwise enjoined and restrained by order of this court, will cause great and irreparable injury to plaintiff in that the building cannot be used for their meetings – or otherwise fostering the growth of AVAAA, the arts, and the principles AVAAA was founded on, in the community.

234. Also, both the membership of AVAAA and the public have been misled. Artists, including Steve Ponting (who was forced to leave after the usurper board instructed him his art display was not covered), will continue to be locked out of the building.  The rents, business, and other operations will be ran by an illegally formed board created at the direction and for the benefit of the beneficiary of the note and deed of trust (RDA) to whom AVAAA owes $214,000.00.

235. In addition, Defendants have stolen the identity of AVAAA and are establishing bank accounts with signatories other than that of the plaintiffs.

236. Plaintiff has no adequate remedy at law for the injuries in that it will be impossible for plaintiff to determine the precise amount of damage which it will suffer if defendants' conduct is not restrained or plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for its injuries.

237. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore, sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages as herein alleged were proximately caused by their conduct.


**SEVENTEENTH CAUSE OF ACTION: QUIET TITLE**

**AGAINST ALL DEFENDANTS** and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto; and DOES 1 through 100, inclusive

238. Plaintiffs reallege the previous paragraphs pled herein and add the following:

239. Plaintiff AVAAA is the owner of certain real property known as "The Cedar Center" consisting of four buildings and their addresses of 44845 Cedar Avenue, 44851 Cedar Avenue, 44857 Cedar Avenue, and 606 Lancaster Boulevard legally described as

**"Lots 8 and 9 in Block 10, Town of Lancaster, in the City of Lancaster, County of Los Angeles, State of California, as shown on map filed in Book 5, pages 470 and 471, miscellaneous Records, in the Office of Registrar-Recorder of said County."**

in the City of Lancaster, County of Los Angeles ("the premises").

240. Defendants Lancaster Redevelopment Agency and Does 1-10 are responsible for reconveying any interest they may have in the subject property by way of a note and deed of trust to the Antelope Valley Allied Arts Association, a California Corporation ("AVAAA") after defendants failed to deliver possession to AVAAA on August 1, 2010.

241. AVAAA demanded on June 29, 2010 that possession be returned or suffer the consequences of CCP 726, aka, "the one action rule".

242. AVAAA had warned defendant RDA on April 15, 2010, that the consequences of action it proposed in an April 9, 2010 letter would be that seizing possession would be defendant RDA's "One Action".

243. **Defendants and** all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto **include** any other persons defendant has leased, conveyed, or promised this same property to, including defendants Licciardi, Navarette, and Alcoser.

244. The basis of plaintiff's title is as stated above and in this complaint (including the fact that defendant RDA elected to pursue self-help possession as its "one action" under the note and deed of trust).

245. Plaintiff AVAAA seeks to quiet title against the following claims of defendants:

    a.  That defendants City of Lancaster and RDA's seizure of the plaintiff AVAAA's property was not the City's and RDA's "one action" under the note and deed of trust.

    b.  That defendants, City of Lancaster and RDA, did not seize the real property from AVAAA on June 21, 2010 at 5:00 p.m.

c. That defendants, other than defendants City of Lancaster and RDA, did not seize the real property from AVAAA on January 14, 2010 for the RDA.

d. That defendant RDA has not continued in possession through and to January 11, 2011.

e. That defendants RDA or the City of Lancaster are owed any money at all on the note and deed of trust executed by plaintiff AVAAA in 1994 in the face amount of $249,000.00.

f. That defendants, or any of them, own or have any interest in the property.

g. Any claim, whatsoever, that defendants, or any of them, is entitled to any right, title, estate, lien, or interest in the City of Lancaster, County of Los Angeles ("the premises") known as 44845 Cedar Avenue, 44851 Cedar Avenue, 44857 Cedar Avenue, and 606 Lancaster Boulevard and legally described as

**"Lots 8 and 9 in Block 10, Town of Lancaster, in the City of Lancaster, County of Los Angeles, State of California, as shown on map filed in Book 5, pages 470 and 471, miscellaneous Records, in the Office of Registrar-Recorder of said County."**

246. Defendant's claims are without any right, and defendants have no right, title, estate, lien, or interest in the property described above or any part of it except as noted.

h. Plaintiffs' name as defendants in this action all persons unknown, claiming any legal or equitable right, title estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud upon plaintiff's title thereto.  The claims of each such unknown defendant are without any right, and these defendants have no right, title, estate, lien, or interest in the property described as

**"Lots 8 and 9 in Block 10, Town of Lancaster, in the City of Lancaster, County of Los Angeles, State of California, as shown on map filed in Book 5, pages 470 and 471, miscellaneous Records, in the Office of Registrar-Recorder of said County."**

247. Plaintiff seeks to quiet title as of August 5, 2010.

## EIGHTEENTH CAUSE OF ACTION:  VIOLATION OF DISPOSITION AGREEMENT

### AGAINST DEFENDANT RDA, City of Lancaster, and Does 1-25

248. Plaintiffs incorporate by reference all previously alleged paragraphs.

249. Lancaster Redevelopment Agency and the City of Lancaster agreed with AVAAA and its officers and directors, past, present, and future that the Defendants Lancaster Redevelopment Agency and the City of Lancaster would remove the underground petroleum storage tank.  That tank remains on the property, in violation of 42 USC Sec. 6991 et. seq.

250. Plaintiffs also bring this action under 42 USC Sec. 6991e as private attorney general.  As such plaintiffs are entitled to both attorney fees and penalties of up to $10,000 per day from December 22, 1998 forward.

251. Plaintiffs are informed and believe that part and parcel of the disposition agreement made by the Defendants Lancaster Redevelopment Agency and the City of Lancaster was the implication that there was no problem with asbestos – and if there had been, Defendants Lancaster Redevelopment Agency and the City of Lancaster would not prevent its removal.  When these defendants' agent, defendant Licciardi, complained the hall that was being worked on in early October, 2009, had – or may have had asbestos, defendants reacted by causing the arrest of AVAAA officers and manager and creating a false board that began calling itself AVAAA.

252. Defendants Lancaster Redevelopment Agency and the City of Lancaster failed to abide by the provisions of section 5.03 of the disposition agreement.  Specifically the Defendants failed to remove the tanks, yet seized the property after they were informed of the litigation AVAAA had to bring to get their property back.

253.  Further, they seized the property while they were guilty of "acts or omissions" of the City of Lancaster and the RDA.  These acts included

defendants and their agents creating chaos in or around October 1, 2009 concerning the AVAAA board and the repairs that were to begin then.

254. Further, Defendants Lancaster Redevelopment Agency and the City of Lancaster seized the property while they were guilty of "acts or failures to act" in interfering with the lawful operation of AVAAA's board by creating a usurper board, stealing the name of AVAAA, and then holding the usurper board as legitimate at a public meeting while disparaging the true board as running a criminal enterprise.

255. Further, defendants promised to remove or assist in the removal of any unfriendly environmental substances including underground storage tanks.

256. Defendants have violated the terms of the agreement and remain in violation of the specific terms to this day.

257. Plaintiffs have been damaged as a result of defendants' actions.

258. In order to place plaintiffs in the position they would have been but for the breach of agreement, AVAAA would need to either be paid $2,500,000 or the RDA finance the removal of asbestos and the underground tanks as well as pay for any engineering costs in so doing, as well as any engineering and construction to retrofit the four buildings known as the Cedar Center.

259. In order for the individual plaintiffs to be compensated for the breach of the disposition agreement as third party beneficiaries, they would need to be

compensated for being dispossessed of the property these past 12 months, as well as any consequential damages flowing from the dispossession.

260. Plaintiffs have complied with the claim statute.

## NINETEENTH CAUSE OF ACTION:  QUI TAM

## AGAINST DEFENDANT RDA, City of Lancaster, and Does 1-25

261. Plaintiffs incorporate by reference all previously alleged paragraphs.

262. Lancaster Redevelopment Agency and the City of Lancaster are responsible for the removal of the underground petroleum storage tank located on the AVAAA property at 44857 Cedar Street, Lancaster, CA.

263.  That tank remains on the property, in violation of 42 USC Sec. 6991 et. seq.

264. Plaintiffs informed the EPA of the violations being committed by defendants on or about June 29, 2010.

265. Plaintiffs also bring this action under 42 USC Sec. 6991e as private attorney general.  As such plaintiffs are entitled to both attorney fees and penalties of up to $10,000 per day from December 22, 1998 forward as private attorney general and as whistleblower.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that the above referenced matter be heard by a jury trial on this matter.

## PRAYER FOR RELIEF

On the First cause of action, for DEFAMATION

1. For damages in the amount according to proof;

2. For such other special and general damages as may be proved at time of trial;

3. For costs according to proof;

4. For punitive and exemplary damages according to proof;

On the Second cause of action, for TAKING WITHOUT COMPENSATION (U.S. Const., Amends. V, XIV)

1. For damages in the amount of $5,000,000 plus interest at the legal rate;

2. For such other special and general damages as may be proved at time of trial

3. For attorney's fees as provide in 42 USCS 1988

4. For costs according to proof;

On the Third cause of action, for VIOLATION OF CIVIL RIGHTS (42 USCS 1983)

1. For damages in the amount of $2,800,000 plus interest at the legal rate;

2. For such other special and general damages as may be proved at time of trial

3. For attorney's fees as provided in 42 USCS 1985 and 1988.

4. For costs according to proof;

5. For punitive and exemplary damages according to proof;

On the Fourth cause of action, for FORCIBLE ENTRY

1. For possession of the premises.

2. For damages of
   a.   $240.00 per day for each day defendants have continued in
        possession of the premises, until judgment entered;
   b.   $25.00 per day for each day defendants have prevented plaintiff
        from using plaintiff's personal property, until judgment is
        entered; and
   c.   $100,000 for each plaintiff's mental distress, discomfort, and
        annoyance.

3. For Reasonable Attorneys' fees to the extent the forcible detainer is deemed
   a taking.

4. For Costs of this action.

5. For further relief that the Court considers just and proper.

As to the Fifth Cause of Action For BREACH OF COVENANT OF GOOD

FAITH AND FAIR DEALING and the Seventh Cause of Action for NEGLIGENT

MISREPRESENTATION

1. For damages in the amount according to proof;

2. For such other special and general damages as may be proved at time of trial;

3. For costs according to proof;

As to the Sixth Cause of Action For INTENTIONAL MISREPRESENTATION; the Eighth Cause of Action for FRAUD (PROMISSORY); the Ninth Cause of Action for FRAUDULENT MISREPRESENTATION; the Tenth Cause of Action for INDUCING BREACH OF CONTRACT; Eleventh Cause of Action for INDUCING BREACH OF CONTRACT; the Twelfth Cause of Action for NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; the Fourteenth Cause of Action for INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE and the Eighteenth Cause of Action for VIOLATION OF THE DISPOSITION AGREEMENT.

1. For damages in the amount of 5,000,000 for the Cedar Street Complex, and 500,000 for each individual plaintiff; and

2. For loss of business opportunity;

3. For loss of Goodwill;

4. For special damages plus interest at the legal rate;

5. For statutory damages of $10,000 for each day after December 22, 1998 the tank remained in the ground.

6. For such other special and general damages as may be proved at time of

   trial;

7. For attorney's fees and costs according to proof;

8. For punitive and exemplary damages according to proof;

As to the Fifteenth Cause of Action for DECLARATORY RELIEF

g. to declare the plaintiffs the true board of AVAAA at all times.
h. One Action Rule mandates reconveyance of note and deed of trust
i. The One Action Rule mandates the Lancaster Redevelopment Agency reconvey the note and deed of trust to AVAAA.
j. The Lancaster Redevelopment Agency has no right, title, or interest in 44845 Cedar Avenue, 44851 Cedar Avenue, 44857 Cedar Avenue, and 606 Lancaster Boulevard ("Cedar Center").
k. Violation of disposition agreement for failure to remove old fuel tanks
l. Violation of disposition agreement for failure to remove and/or disclose the presence of asbestos.

As to the Seventeenth Cause of Action for Damages for QUIET TITLE

1. An order or judgment finding the Antelope Valley Allied Arts Association is

   the owner of an one hundred percent (100%) undivided interest in the real

   property located in Los Angeles County, California, free of any

   encumbrances from the defendant Lancaster Redevelopment Agency

   described as:

The real property is commonly known as "The Cedar Center"

   consisting of four buildings and their addresses of 44845 Cedar

   Avenue, 44851 Cedar Avenue, 44857 Cedar Avenue, and 606

   Lancaster Boulevard legally described as

**"Lots 8 and 9 in Block 10, Town of Lancaster, in the City of Lancaster, County of Los Angeles, State of California, as shown on map filed in Book 5, pages 470 and 471, miscellaneous Records, in the Office of Registrar-Recorder of said County."**

in the City of Lancaster, County of Los Angeles ("the premises").

That Defendants Lancaster Redevelopment Agency and Does 1-10 are responsible for reconveying any interest they may have in the subject property by way of a note and deed of trust to the Antelope Valley Allied Arts Association, a California Corporation ("AVAAA") after defendants failed to deliver possession to AVAAA on August 1, 2010.  AVAAA had demanded on June 29, 2010 that possession be returned or suffer the consequences of CCP 726.

**Defendants** all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud on plaintiff's title thereto **include** any other persons defendant has leased, conveyed,  or promised this same property to, including defendants Licciardi, Navarette, and Alcoser, **own no right, title, estate, interest or lien, whatever, in the Property.**

As to the Sixteenth Cause of Action for INJUNCTIVE/MANDAMUS RELIEF

1.  For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

    a.  From portraying themselves as on the Board of Directors or as an officer of Antelope Valley Allied Arts Association

    b.  From portraying any of their employees as on the Board of Directors or as an officer of Antelope Valley Allied Arts Association

    c.  From recognizing any portion, successor, or remnant of the "Eric Perry" Board formed in October, 2010.

    d.  From interfering with the true board, consisting of

President: Jeffrey D. Moffatt, Esq.

1st Vice:  Tonia Thompson

2nd Vice:  as may be named

3rd Vice:  as may be named

Parliamentarian:  Steve Ponting

Ways and Means Chairperson:  Lyndon Easley

Gallery Chairperson: Tracee Estabrooke

Treasurer:  Staretta Moffatt

Corresponding Secretary:  As may be named

Recording Secretary:  As may be named

Trustee:  Evie Cook

Trustee:  As may be named

    e.  From occupying any portion of the Cedar Center;

    f.  From holding keys or means of ingress and egress which should be for the true AVAAA board only.

### As to the Nineteenth cause of action, for Whistle Blowing (Qui Tam)

1. For damages in the amount of the ten percent of $11,000 for each day beyond December 22, 1998

2. For attorney's fees and costs.

## AS TO ALL CAUSES OF ACTION

PLAINTIFF PRAYS THE COURT GRANT THE FOLLOWING RELIEF:

1. For general damages in an amount according to proof.

2. For special and consequential damages according to proof;

3. For loss of earning and earning capacity according to proof.

4. For property damage according to proof, including loss of use.

5. For costs of suit incurred herein.

6. For Pre-judgment interest of ten percent (10%) per annum pursuant to California Civil Code Section 3291 or seven percent (7%) per annum, as the case may be;

7. For Attorney fees as provided under 42 United States Code Section 1985 and 1988(b);

8. An order declaring the note and deed of trust be reconveyed to plaintiff AVAAA; and

9. An order quieting title, as prayed; and.

10. An order granting mandamus/injunctive relief, as prayed; and

11. Other and further relief as the Court may deem just and proper.

12. For damages in the amount of the ten percent of $11,000 for each day beyond December 22, 1998

Dated: January 11. 2011

Olaf Landsgaard, Attorney for
Plaintiffs, AVAAA et. al.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I, am the plaintiff in the above-entitled action.  I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:          January 17, 2011 at Rosamond, California.


Jeffrey Moffatt, President
Antelope Valley Allied Arts Association

VERIFICATION                                                                                    Page 78

PROOF OF SERVICE

**STATE OF CALIFORNIA** )
                     ) ss.
**COUNTY OF KERN**      )

    I am employed in the County of Kern.  I am over the age of 18 and not party to the within entitled action.  My business address is:  4171 Knox Avenue, Rosamond, CA 93560.

    On January 11, 2011, I served, in the manner indicated below, the foregoing documents described as:

    COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF

    Enclosed in sealed envelope(s), addressed as follows:

| | |
|---|---|
| Allison E. Burns<br>Reed T.C. Glyer<br>Stradling Yocca Carlson & Rauth<br>660 Newport Center Drive, #1600<br>Newport Beach, CA 92660-6422<br>Telephone:  (949)725-4000<br>Fax:  (949)725-4100 | Attorney for Defendants Lancaster Redevlopement Agency, City of Lancaster, Mitra Licciardi, individual and dba Cedar Center Performing Arts, Josie Alcoser, and Michelle Navarette |

_XXX_    (BY MAIL)I deposited such envelope(s) in the mail at Rosamond, California.  I am "readily familiar" with the firms practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on the same day.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date of postage meter is more than 1 day after date of deposit for mailing in affidavit.

    I declare, under penalty of perjury, that the foregoing is true and correct.

    Executed on January 12, 2011, 2010, at Rosamond, California.

                              Linda Echegaray